Chief Justice Robertson
delivered the Opinion of the Court.
Samuel Churchill — claiming to be the owner of three thousand acres of land on the Ohio river, in Union County, opposite Shawneetown, under a conveyance, in 1827, by six of the Trustees of the Jefferson Seminary, who claimed the land under a patent issued, in 1799, to six of their predecessors, as Trustees of the said Seminary—made an application to the County Court of Union, for the grant of ferry privileges, across the river, from a point embraced in his deed, to the opposite shore; but William Grundy—who seems to be the alienee of a ferry, within less than a mile of the site of that asked for by Churchill, and which had been previously granted, by the same Court, to one Latham, who claimed the bank of the river, under a patent issued, in 1818, upon a Treasury warrant—opposing the application, the court rejected it. And the question now to be decided, is whether the County Court erred in overruling. Churchill’s motion.
Churchill’s title to the land, at the date of the order rejecting his application, is, we are inclined to think, sufficiently established. Though the patent was to the Trustees by name simply, as trustees, without any,express. limitation or succession, yet it purports op, its face. *100 to pass the title for the purpose of fulfilling an act of 1798, which authorized the appropriation of the laud by the Trustees, for the benefit of the Seminary, and vested in them and their successors, the rights and powers of Trustees of other academies; and therefore, as the successors of the trustees of other academies referred to in the act of 1798. had all the powers of their predecessors, the successors of those of the Jefferson seminary had the power, under an act of 1820, to sell and convey, even without the authority of other enactments which have been cited as confirmatory of that power.
Where a river is designated as the boundary of land, the legal deduction is, that no land was left between the tract & river, on which a ferry could be legally granted to another proprietor.
Errors of fact, as well as of law, may be assigned in ferry cases; and a case may be re tried in the Court of Appeals, upon the same, or upon different proof; and the final judgment there, will be according to the proof there: and, hence, there may be a reversal of an order that was right, or an affirmance of one that was wrong, on the proof in the county court. So, as ferry privileges upon the Ohio, can only be granted to owners of the landing places, if an applicant, pending on appeal, parts with his title to the land, he must fail in the appellate ct.
*100 And consequently, as there were only eleven Trustees in November 1826, and no appointment was made afterwards, except for the purpose of filling a vacancy, and as the number never afterwards exceeded eleven, and in fact was only ten at the date of the conveyance to Churchill—the six who executed that deed constituted a majority of the board, and had authority to sell and convey the legal title to the land.
And as the survey and patent show, that the river was made one of the boundaries, it would seem, as a legal deduction, that there was no vacant laud left for subsequent appropriation between the seminary claim and the river; and therefore, at the time of his application, the appellant seems to have been the owner of the land, including the point at which he proposed to have a Ferry established. But, as this point is not indispensable to the decision of this case and as the evidence is not perfectly conclusive, we do not definitively decide upon it.
It is shown that the appellant does not own the land at this time, but that during the pendency of this appeal, he conveyed his title to another person. And this fact presents the first ground that has been urged against a reversal of the order overruling his application.
By the law of this state, the County Courts have no authority to grant a ferry on the Ohio River to any other person than the owner of the land including the point of embarkation. And when a ferry case is brought to this court, errors in fact as well as errors in law, may be assigned; and, as, therefore, this Court does not necessarily decide, in such a case, on the same facts as those *101 on which the County Court adjudicated, it cannot, as a matter of course, say that the judgment of that court was erroneous; but only determines what is the conclusion of law, from the facts proved here. Although the facts exhibited on the hearing of such a case in the County Court, may have justified an order which that Court made, still, this Court would reverse, unless the facts presented on the trial here, would be sufficient to sustain it.
The grant of a ferry to a former owner of the landing place, would not vest his alienee with the franchise; but would vest it in him to whom it was granted; nor would his deed estop him from claiming the right afterwards granted to him; nor operate as defeasance, or a transfer of the right to the alienee. The transfer of the title would be ground for dismissing the appeal. The alienee cannot become party to the pending appeal. If he wants a ferry he must apply for it himself.
As, then, it appears on the trial of the case in this Court, that the appellant is not the owner of the land, it seems to us, that we ought not to decide that he is entitled to be the grantee of a ferry, and remand the case to the County Court, with instructions to grant him a ferry. By the conveyance, pendente lite, he has divested himself of all title to such a franchise, and has waived the right to ask a reversal of the order overruling his application.
The necessary legal consequence of now granting a ferry to him, would not be a transferrence of the franchise to his alienee; for though his conveyance passed all the rights incidental to his title, and therefore would have transferred any ferry privilege he may have had at the date of the deed: nevertheless, a grant to him of a ferry now, would not retroact, so as to pass by operation of law, as an incident to the title he had previously conveyed; but would, on the contrary, entitle him to the ferry, on the ground that this Court had, constructively at least, decided that he owned the land when the franchise was granted to him, and had therefore granted it to Him. And even if he might be estopped by his deed, as to the title to the land, the estoppel would not apply to the judgment of this Court granting him a ferry, nor operate as a defeasance of his grant, or a legal transfer of its benefits.
But the sole question is, whether he now has title.—The grantee of a ferry on the Ohio should have title to the land at the date of his grant. His having once had it, does not authorize a grant to him when he has no right.
It has been decided that, an assignment of an assignable bond, during the pendency of a suit upon it in the *102 name of the obligee, may be pleaded in bar of the action. And the reason is even stronger why an alienation of the legal title to land, whilst an application for a ferry from it is depending, should defeat the applicant. The alienee is no party here; nor could he be. If he be entitled to a ferry, he should apply to the County Court for a grant of one. He could not intervene here, as an heir, and perhaps a devisee, might do, when there might be a revivor here, and, on the reversal of the order, a revivor or re-application by the successor of a deceased applicant. On this ground the appeal might be dismissed.
Where the law is that, no ferry shall be granted within a certain distance of one already established, the grant of the existing ferry must be considered valid upon an application for another; it cannot be retried where it is involed only collaterally. If it should appear upon the face of the record, that the grantee had no title to the land, when the grant was made, a want of jurisdiction would appear, and the grant would be void. But a recital in the record, that the grantee of the ferry is the owner of the land, must be taken as true in a collateral proceeding, tho’ the evidence on which it is founded does not appear.
But the proximity of Grundy’s ferry presents a sufficient reason for affirming the order of the County Court. The law does not permit the granting of a ferry so near a subsisting one previously established. Unless, therefore, Grundy’ ferry be void, and this Court can pronounce it so, the appellant, if he now owned the land, would not be entitled to the ferry which he is seeking.
The appellants counsel insists, that Latham had no title to the land, because, as argued, there was no land there subject to appropriation when he entered his warrant; and that, therefore, as the County Court had no authority to grant him a ferry privilege, this Court should, on that ground, disregard the grant to him, as a nullity. This conclusion, from those premises, would be admitted if the record of the grant to Latham could now be controverted in this collateral mode. As the County Court had only a special jurisdiction, its order was void, unless Latham had been adjudged to be the owner of the land, and it should be deemed void in this case, if the record of it shall be construed as showing the fact that he had no title. We need not now decide what should be its effect had it been silent as to his right to the land. But it imports, in substance, that, in the opinion of the County Court, he had title; and such a declaration, when questioned collaterally, should be accredited, and deemed conclusive evidence that the County Court had jurisdiction to grant the ferry; for it was not a case in which it was necessary, or even usual, to exhibit the documents or proofs of title in the record; and therefore, this Court could not, consistently with *103 comity or established judicial duty, presume that there had been no proof of title in Latham, when the County Court has shown, by its record, that it had been satisfied and had therefore, decided that he had title. On the contrary, it is our province now to presume that there was such evidence of title as was sufficient to give to the County Court jurisdiction to decide whether the applicant had title or not. And if the County Court had jurisdiction, its order, as long as it remains unreversed and unrevoked, cannot be defeated or disregarded by any collateral proof that, the title having been in another person, and not in Latham, the decision upon that essential point was erroneous. Although the proceeding may have been ex parte, nevertheless, it was quasi in rem, operating as constructive notice to all persons who claimed the land; and if the order was erroneous; any person who may have been prejudiced by it, might have prosecuted a writ of error to reverse it. And therefore,though it is no evidence of Latham’s title to the land, against a claimant who was not a party to it, it is nevertheless, conclusive now of the fact, that Latham's ferry was legally established. And therefore, as there is no evidence of a reversal or discontinuance, this Court cannot decide that, merely because the order may have been erroneous, Grundy has not a valid and subsisting ferry. It is there: it was established by a tribunal whose record shows that it had power to establish it. And it is not material, in this case, whether the facts now before us, show that Grundy or another has the best right to it. Even if the right to it should depend on the ultimate title to and possession of the land, still that question cannot be settled availably in this case, because the matter now to be decided, is whether another ferry can be established within a mile and a half of one previously established, and still subsisting, in judgment of law. And on that paint, the law of the state is explicit and peremptory, unless there had been proof that the established ferry is in a Town, or near “an impassible creek;” and there is no such evidence in this record.
The grant of a ferry, is a proceeding in rem—operating as notice to all persons claiming the land where it is located; and any person prejudiced by the grant, may prosecute a w. e. to reverse it.
Where any ferry across the Ohio has been established and is continued, the granting of any other within 1½ mile, unless it be in a town, or near an impassable creek, is prohibited by statute.
Wherefore, the order rejecting Churchill’s application, is approved and affirmed.